IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AVERY MIGUEL PERRY, SR.,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | **NO. 22-CV-1699** |
| | : | |
| **C.O. MEIR,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO. J.                                                                                  MAY 27, 2022

      Before the Court is a Complaint filed by Avery Miguel Perry, Sr., a former prisoner, based on allegations that he was assaulted by a correctional officer and denied mental health medication while incarcerated at the Chester County Prison. (ECF No. 1.) Also, before the Court, are Perry's three identical *motions to proceed in forma pauperis.* (ECF Nos. 10-12.) For the following reasons, the Court will grant Perry leave to proceed *in forma pauperis*, dismiss some of his claims, and allow one claim to proceed at this time.

**I.       FACTUAL ALLEGATIONS**

      Perry names two Defendants in his Complaint, the Chester County Prison and Correctional Officer Meir. (Compl. at 1.)[1] Perry indicates that he has named Meir in his official capacity only. (*Id.* at 2.) Perry alleges that the events giving rise to his claims occurred on December 21, 2020, between midnight and 1 a.m., in the "medical section" of Chester County Prison. (*Id.* at 4.)

      The Complaint reflects that Perry suffers from a mental illness for which he was prescribed medication. He claims that at some point during his incarceration, he was "denied [his] life sustaining mental health medication", which caused him "emotional distress almost to the brink of

---

[1]     The Court adopts the pagination supplied by the CM/ECF docketing system.

suicide." (*Id.* at 5.) At some point during his incarceration at the Chester County Prison, Perry requested assistance with his mental health needs and "a superior to validate what was happening when demanded to be strip naked." (*Id.* at 4.)

After requesting mental health assistance, Perry alleges that five correctional officers restrained him. (*Id.*) Although Perry alleges that the officers "assaulted" him, he clarifies that four officers restrained him "without incident", while Officer Meir applied his knee to Perry's neck. (*Id.*) As a result of the pressure applied to his neck, Perry was not able to breathe, asked Meir to stop, screamed for help, and ultimately had a seizure as a result of the increasing pressure applied by Meir. (*Id.*) Perry was hospitalized as a result of the incident. (*Id.*) Perry's fiancé ultimately bailed him out and, after his release, he "had to undergo over a month of inpatient care to be reacclimated to [his] medication, as well as over 2 weeks on pain medication with an inability to remove the 'kink' in [his] neck/back while in inpatient care." (*Id.* at 5.) Based on these allegations, Perry raises damages claims pursuant to 42 U.S.C. § 1983 based on Meir's use of force against him and the denial of his mental health medication.[2] (*Id.* at 3, 5.)

---

[2] The Complaint also refers to the "Disability Act of 1973," which the Court understands to mean the Rehabilitation Act. "Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits a federally funded . . . program [operated by the state or local government] from discriminating against a handicapped individual solely by reason of his or her handicap." *Wagner by Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1008 (3d Cir. 1995); *see* 29 U.S.C. § 794(b)(1). However, the Rehabilitation Act does not "create a cause of action for prisoners who are challenging their medical care." *Guilfoil v. Connections*, No. 16-363, 2019 WL 4194674, at *6 (D. Del. Sept. 4, 2019); *see also Iseley v. Beard,* 200 F. App'x 137, 142 (3d Cir. 2006) (*per curiam*) (prisoner failed to allege claim under the Americans with Disabilities Act, which is construed according to the same standards as the Rehabilitation Act, where he alleged "that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions"); *Shelton v. Arkansas Dep't of Hum. Servs.*, 677 F.3d 837, 843 (8th Cir. 2012) ("The district court correctly held that a claim based upon improper medical treatment decision may not be brought pursuant to either the ADA or the Rehabilitation Act."); *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."). Nor do Perry's allegations about Defendant Meir's use of force against him suggest that he was denied the ability to participate in a federally-funded government program due to a disability. Accordingly, the Court will dismiss any claims brought under the Rehabilitation Act with prejudice because any amendment of those claims would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

## II. STANDARD OF REVIEW

The Court grants Perry leave to proceed *in forma pauperis* because it appears that he does not have the current ability to pay the fees to commence this case. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Perry is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To be liable in a civil rights action "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1988). For the following reasons, the Court concludes that the only claim presented by Perry's Complaint that passes statutory screening is an excessive force claim against Meir.

### A. Claims Against the Chester County Prison

Perry has named the Chester County Prison as a Defendant. However, county jails and prisons are not "persons" that are "subject to suit under federal civil rights laws." *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010); *see also Mincy v. Deparlos*, 497 F. App'x 234, 239 n.5 (3d Cir. 2012) (*per curiam*) ("The District Court appropriately concluded that the Lycoming County Prison is not a person within the meaning of Section 1983."); *Johnson v. Chester Cnty. Prison*, No. 19-4960, 2020 WL 405605, at *4 (E.D. Pa. Jan. 24, 2020) (Chester County Prison not a person within the meaning of § 1983). Accordingly, any claims against the Chester County Prison is dismissed with prejudice because amendment of those claims would be futile.

### B. Official Capacity Claims

Perry has also failed to state a claim against Officer Meir in his official capacity. Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Accordingly, Perry's official capacity claims against Meir, a correctional officer at the Chester County Prison, are essentially claims against the employing municipality, Chester County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must allege facts showing that the municipality "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Nothing in Perry's Complaint alleges that the conditions or conduct on which he bases his claims was the result of a municipal policy or custom. Accordingly, Perry has failed to state a plausible claim against Correctional Officer Meir in his official capacity. However, since Perry appears not to have understood the implication of checking the official capacity box on the form complaint he used to prepare his pleading, and since the Complaint seeks damages for Meir's actions, the Court will liberally construe the Complaint to assert claims against Meir in his

5

individual capacity and address those claims below. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed even though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

### C. Excessive Force

Perry brings an excessive force claim against Meir. Because Perry was a pretrial detainee during the relevant event, the Due Process Clause of the Fourteenth Amendment governs his excessive force claims.[3] *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted). To state a due process violation based on excessive force, a pretrial detainee must allege facts to plausibly suggest that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. Whether unreasonable force has been used

---

[3] Although Perry cites the Eighth Amendment, (*see* Compl. at 3), it appears that Perry was a pretrial detainee at the time of the events in question considering his allegation that he was released on bail. (*Id*. at 5.) Accordingly, the Fourteenth Amendment, rather than the Eighth Amendment, governs his claims. *See Hubbard v. Taylor,* 399 F.3d 150, 166 (3d Cir. 2005).

6

against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Here, Perry alleges that Meir placed his knee on Perry's neck and continued to apply pressure despite Perry's screams and requests that he stop. As a result of the pressure applied to his neck, Perry was not able to breathe, suffered a seizure, and was hospitalized. These allegations are sufficient to state a plausible excessive force claim against Meir.

### D. Deliberate Indifference to Medical Needs

Perry's claim based on the denial of his mental health medication is best construed as a claim for deliberate indifference to his serious mental health needs.[4] To state a claim in the context of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). "A deliberate indifference to a serious medical need claim can apply in various inmate medical situations, including failing to provide adequate mental health services." *DeJesus v. Delaware through Delaware Dep't of Corr.*, 833 F. App'x 936, 940 (3d Cir. 2020) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 227-29, 231-32 (3d Cir. 2017)); *see also Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979) (deliberate indifference is

---

[4] The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

actionable "when inmates with serious mental ills are effectively prevented from being diagnosed and treated by qualified professionals").

For instance, deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment, however, are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Id.* at 236.

Although Perry did not identify the condition or conditions from which he suffers, liberally construing the Complaint, the Court understands Perry to be alleging that he suffers from a mental illness for which he has been prescribed medication by a physician. The Complaint also alleges that Perry became suicidal after failing to receive this medication. These allegations plead a serious mental health need. However, Perry has not alleged that Meir, a correctional who is not a medical official, acted with deliberate indifference to that need or was responsible for Perry being denied his medication. Indeed, nothing in the Complaint suggests that Meir was even aware of Perry's mental health condition or the fact that he was on medication for that condition. For these reasons, Perry has not stated a claim against Meir, or any other individuals involved who may have been involved in his care or treatment, for deliberate indifference to his serious mental health needs.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Perry leave to proceed *in forma pauperis* and dismiss all claims except for Perry's excessive force claim against Defendant Meir in his individual capacity. Any claims under the Rehabilitation Act are dismissed with prejudice, as are Perry's § 1983 claims against the Chester County Prison. However, Perry's official capacity claims against Meir and his claims for deliberate indifference to his mental health needs are dismissed without prejudice. Rather than direct service of process at this time so that Perry may proceed on his excessive force claim against Meir in his individual capacity, the Court will give Perry an opportunity to file a comprehensive amended complaint in the event he can cure the defects in the claims the Court has dismissed without prejudice. An appropriate Order follows, which provides further guidance to Perry about his options for proceeding.

*NITZA I. QUIÑONES ALEJANDRO. J.*